# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-251-19 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| BOBBI BOYLAN, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On February 26, 2020, defendant Bobbi Boylan ("Boylan" or "defendant") was sentenced to a custody term of 144 months. (Doc. No. 552 (Judgment); *see* Minutes of Proceedings [non-document], 2/26/2020.) Boylan is currently serving her sentence at Waseca FCI and has an anticipated release date of February 9, 2030.[1] Now before the Court is Boylan's motion, as supplemented, for compassionate release. (Doc. No. 847 (Motion); *see* Doc. Nos. 848, 850, 851, 853, 856, 859.) Appointed counsel filed a notice of intent to not file a supplement in support of compassionate release. (Doc. No. 857 (Notice).) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 858 (Response).)

## I.    BACKGROUND

On April 24, 2019, Boylan became one of twenty-one individuals charged with participating in a multi-year drug trafficking organization ("DTO") that distributed fentanyl and other controlled substances in the Cleveland, Ohio area. (Doc. No. 13 (Indictment).) In particular, Boylan was charged with conspiracy to distribute and possess with intent to distribute heroin,

---

[1] *See* https://www.bop.gov/inmateloc// (last visited December 29, 2025).

fentanyl, and fentanyl analogues, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C), and distribution of heroin, fentanyl, carfentanil, and acetylfentanyl resulting in serious bodily injury, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). (*Id*.) The distribution charge related to Boylan's sale of fentanyl, carfentanil, heroin, and acetylfentanyl to another person resulting in an overdose. (Doc. No. 449 (Final Presentence Investigation Report ("PSR")), at 8[2] ¶ 18.)

On September 25, 2019, with the benefit of a Rule 11(c)(1)(C) plea agreement, Boylan entered a guilty plea to the charges against her in the indictment. (Minutes of Proceedings [non-document], 9/25/2025; Doc. No. 399 (Plea Agreement). Prior to sentencing, the Court ordered the preparation of a PSR. (*See* Doc. No. 449.) In arriving at an appropriate sentence, the Court first determined the base level offense to be 43. (*See also id*. at 9 ¶ 24.) After the appropriate adjustments were applied—namely, a 3-level reduction for acceptance of responsibility—the resulting total offense level was 40. (*See also id*. at 9 ¶¶ 31–33.) Boylan had one prior drug trafficking conviction, which scored 3 criminal history points. (*See also id*. at 10–11 ¶¶ 39, 41.) With a criminal history category II and an offense level of 40, the advisory guideline range was 324 to 405 months.[3] (*See also id*. at 11, 16 ¶¶ 42, 67.) Nevertheless, the Court accepted the parties' negotiated sentence and imposed a custody term of 144 months. (*See* Doc. No. 399, at 5 ¶ 15; Doc. No. 552.)

On June 2, 2025, Boylan filed the present motion for compassionate release, in which she requests a sentence reduction. In support, Boylan claims that she has taken advantage of every available opportunity to rehabilitate herself and to address her substance abuse addiction, despite

---

[2] All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[3] Because the statutorily authorized minimum sentences were greater than the maximum of the applicable guideline range, the guideline term of imprisonment became life. (*See also id*. at 16 ¶ 67.)

the limited programs available at her facility. (Doc. No. 847, at 1; Doc. No. 848, at 1; Doc. No. 850, at 1.) She also underscores her desire to be released so that she can develop a relationship with her daughter. (*See, e.g.*, Doc. No. 848, at 1–2.) Additionally, she advises the Court that her mother recently suffered the death of her husband and shortly thereafter the death of her own mother, and that her mother "really needs [Boylan] to be home" to assist her "mentally[,] physically[, and] emotionally." (Doc. No. 859, at 2.) Finally, she complains that she received a substantially longer sentence than one of her co-defendants, Lisa Goforth ("Goforth"), who was sentenced on the same day. (Doc. No. 847, at 2; Doc. No. 859, at 1; *see* Doc. No. 554 (Goforth Judgment); Minutes of Proceedings [non-document], 2/26/2020.)

The government believes that the motion should be denied for three reasons: (1) Boylan has failed to exhaust her administrative remedies, (2) Boylan has failed to establish the existence of extraordinary and compelling reasons, and (3) the sentencing factors set forth at 18 U.S.C. § 3553(a) do not support early release. (Doc. No. 858, at 1.)

## II.     MOTION FOR COMPASSIONATE RELEASE

### A.  Governing Law

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion

of the Director of the Bureau of Prisons ("BOP") or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

Boylan does not seek relief under Rule 35, nor does she claim that she was sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered. Instead, she claims that she is entitled to a compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, U.S.S.G. § 1B1.13, was amended effective November 1, 2023, and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons"

4

similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence."[4] U.S.S.G. § 1B1.13(b).

### B. Exhaustion

At the outset, the government correctly observes that there is no evidence that Boylan has exhausted her administrative remedies. In particular, there is nothing in the record to suggest that Boylan has requested a compassionate release from the warden of her facility and that request has been denied or that 30 days has passed without a decision on the request. *See* 18 U.S.C. § 3582(c)(1)(A). As the party seeking a compassionate release, it is Boylan's burden to show that she is entitled to relief, including that she has properly exhausted her administrative remedies. *See United States v. Williams*, 458 F. Supp. 3d 939, 943 (W.D. Tenn. 2020) ("The defendant bears the burden of showing he has exhausted his administrative remedies and is entitled to compassionate release." (citations omitted)). In the absence of any evidence in the record that Boylan has exhausted her administrative remedies, the Court must deny Boylan's motion for this reason alone.

### C. Extraordinary and Compelling Reasons

But even if Boylan had properly exhausted, she would still have to demonstrate that she was entitled to relief under the compassionate release statute (18 U.S.C. § 3582(c)(1)(A)) and the relevant BOP policy statement. The Court, therefore, turns to a consideration of whether defendant has demonstrated the existence of extraordinary and compelling reasons identified in § 3582(c)(1)(A)(i), and discussed in detail in § 1B1.13(b), as amended.

---

[4] To extent that Boylan relies on U.S.S.G. § 1B1.13(b)(6)—unusually long sentence—the Court notes that the Sixth Circuit has recently determined that particular subsection to be invalid. *See United States v. Bricker*, 135 F.4th 427, 430 (6th Cir. 2025) (holding that the United States Sentencing Commission exceeded its authority in promulgating § 1B1.13(b)(6)). In any event, Boylan would not have been able to meet the requirements of this subsection as it required service of at least 10 years imprisonment and a change in the law, neither of which Boylan can demonstrate.

### 1. Rehabilitation

Much of Boylan's motion and her supplements are devoted to an on-going discussion of her attempts to rehabilitate and her plans to pursue a career should she be released early. While Boylan's undocumented rehabilitative efforts and future plans are commendable, alone they do not amount to an extraordinary and compelling reason for release. *See* U.S.S.G. § 1B1.13(d) (stating that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason"); *United States v. Ruffin*, 978 F.3d 1000, 1004, 1009 (6th Cir. 2020) (stating that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release (quoting 28 U.S.C. § 994(t))); *see also United States v. Jethrow*, No. 4:08-cr-520, 2025 WL 461800, at *5 (N.D. Ohio Feb. 11, 2025) ("[T]hough rehabilitation is to be encouraged and applauded, it is also part of what is expected from all inmates.").

### 2. Family Circumstances

Boylan also appears to invoke U.S.S.G. § 1B1.13(b)(3)—family circumstances of the defendant—as a basis for compassionate release. Section 1B1.13(b)(3)(C) provides that the "incapacitation" of the defendant's parent may qualify as an extraordinary and compelling reason for early release where "the defendant would be the only available caregiver for the parent." She indicates the death of her mother's spouse and own mother in rapid succession has left her mother with a "double broken heart[,]" and has caused her to struggle "mentally[,] physically[, and] emotionally." (Doc. No. 859, at 2.) Understandably, Boylan would like to be released early so that she can "take care of [her] mom." (*Id.*)

But Boylan has not demonstrated that the situation with her mother meets the policy statement's definition of "extraordinary and compelling reasons" for compassionate release. Specifically, Boylan has not alleged, let alone documented, that her mother suffers from any

6

medical or physical condition that has rendered her incapacitated. She has also failed to demonstrate that, if her mother were incapacitated and required a caregiver, Boylan would be the only available caregiver for her. In fact, the record reflects that Boylan has a brother who lives in the area. (*See* Doc. No. 449, at 13 ¶ 46.) This family situation, though unfortunate, does not meet the requirements of § 1B1.13(b)(3). *See, e.g., United States v. Raymore*, No. 1:19-cr-81, 2025 WL 2323560, at *3 (N.D. Ohio Aug. 12, 2025) (denying compassionate release motion where defendant failed "to provide any information regarding his mother's specific health conditions or that would show he is the only available caretaker as required under § 1B1.13(b)(3)(C)"); *see also United States v. Villasenor*, No. 21-3477, 2021 WL 5356032, at *1 (6th Cir. Nov. 17, 2021) (recognizing that prisoners often have aging and sick parents and that this fact does not necessarily establish an extraordinary and compelling reason).

### 3. Sentencing Disparities

Boylan's remaining reason for release—a perceived sentencing disparity with a co-defendant—likewise fails to satisfy the threshold requirement for compassionate release. While she complains that she received a much longer sentence than co-defendant GoForth, who was sentenced on the same day as Boylan, any alleged disparity between Boylan and her co-defendant does not qualify as an extraordinary and compelling reason. Both women were sentenced according to their separately negotiated plea agreements. Moreover, it is well settled that "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *United States v. Hunter*, 12 F.4th 555, 570–72 (6th Cir. 2021) (explaining that "even if the sentence disparity did not exist at the time [the defendant] was sentenced, subsequent leniency in another defendant's case says nothing about how [the defendant's] personal circumstances have changed since he was sentenced"); *United States v. Lemons*, 15 F.4th 747, 750

(6th Cir. 2021) (similar); *see also United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008) (recognizing that there can be a number of "valid reasons" for disparities in sentences between coconspirators); *United States v. Wright*, No. 17-cr-20328, 2024 WL 1417504 (E.D. Mich. Apr. 2, 2024) ("district courts may not rely on facts that existed at the time of sentencing when determining whether extraordinary and compelling grounds for release presently are shown" (citations omitted)).

### 4. Conclusion

None of the stated reasons for release considered separately or in combination—even when considered in further combination with Boylan's claims of rehabilitation—constitute extraordinary and compelling reasons. Because Boylan has failed to demonstrate the existence of extraordinary and compelling reasons, her motion for compassionate release must be denied for this additional reason.

### D. Sentencing Factors

But even if Boylan had cleared the hurdles of exhausting her remedies and establishing extraordinary and compelling reasons, the Court would still have denied her motion because the sentencing factors in 18 U.S.C. § 3553(a) do not favor release. The nature and circumstances of the charged offenses were serious. The trafficking of controlled substances is certainly dangerous, as evidenced by the fact that one of Boylan's drug sales resulted in an overdose that caused serious bodily harm. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir 2010) ("To be sure, drug trafficking is a serious offense, that, in itself, poses a danger to the community." (citations omitted)). Additionally, the convictions in the present case were not Boylan's first drug-related convictions. She was previously convicted in state court of drug trafficking, and a prior custody sentence for drug trafficking failed to discourage her from returning to this dangerous and

8

destructive behavior. (*See* Doc. No. 449, at 10 ¶ 39.)

The Court has also considered Boylan's stated release plan, her rehabilitation efforts and attempts, her desire to reconnect with her daughter, and her willingness to provide support for her mother. But after considering all of the § 3353(a) factors, the Court finds that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court also finds that defendant continues to pose a danger to the community.[5]

## III.    RECOMMENDATIONS FOR DRUG TREATMENT

While Boylan has failed to demonstrate an entitlement to a sentence reduction at this time, the Court is concerned regarding her claims that she has been denied substance abuse treatment. (*See* Doc. No. 847, at 1.) Consistent with the Court's recommendation at the time of sentencing, the Court continues to believe that Boylan would benefit from participation in the 500 hour intensive drug treatment program (RDAP) or other similar drug-treatment program. (*See* Doc. No. 552, at 2.) Accordingly, the Court renews its recommendation that Boylan be permitted to participate in the RDAP, or any other drug treatment program for which she qualifies. Additionally, while the Court recognizes that the authority to place a prisoner in a residential reentry center ("RRC") rests with the Bureau of Prisons, *see* 18 U.S.C. § 3621(b), it recommends that Boylan be considered for transfer to an RRC that provides drug addiction rehabilitation services at the earliest possible time and for the longest possible time provided by law. *See also Tapia v. United States*, 564 U.S. 319, 331, 131 S. Ct. 2382, 180 L. Ed. 2d 357 (2011) ("A

---

[5] To the extent that Boylan seeks assistance with an open state case she has in Cuyahoga County, Ohio (*see* Doc. No. 847, at 4), the Court is without authority or jurisdiction to offer any relief or assistance in that separate matter.

sentencing court can *recommend* that the BOP place an offender in a particular facility or program. But the decision-making authority rests with the BOP." (citing 18 U.S.C. § 3582(a) (emphasis in original)).

## IV.    CONCLUSION

For the foregoing reasons, the Court denies defendant's motion, as supplemented, for a compassionate release. The Court recommends that defendant be permitted to participate in any drug treatment programs for which she qualifies at the appropriate time. Additionally, the Court recommends that the defendant be considered for transfer to an RRC that provides drug addiction rehabilitation services at the earliest possible time and for the longest possible time provided by law.

**IT IS SO ORDERED**.

Dated: December 30, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

10